IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

ESTER RUTH COOKSEY,              )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   CIVIL ACTION NO. 5:12-CV-1750-SLB
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social Security,  )
                                 )
    Defendant.                   )

**MEMORANDUM OPINION**

The plaintiff, Ester Ruth Cooksey, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits.  Cooksey timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.  STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether the ALJ applied the proper legal standards.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id*. (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determination of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) (quoting *Smith v. Schweiker*, 646 F.2d. 1075, 1076 (5th Cir. Unit A Jun.1981)). Therefore, this court reviews de novo the Commissioner's conclusions of law. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir.1991).

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

2

expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that the Commissioner uses to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment or combination of impairments;

(3) whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

(4) whether the claimant can perform any of his or her past work; and

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  A claimant who is doing substantial gainful

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity.  20 C.F.R. § 404.1525.

activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge (ALJ) determined Cooksey was not engaged in substantial gainful activity, and found she had the following severe impairments: "type 2 diabetes mellitus with severe insulin resistance, essential hypertension, 'mild' diastolic dysfunction, congestive heart failure (compensated), and

morbid obesity (BMI of 46 percent)." R. 22. The ALJ concluded Cooksey did not suffer from a listed impairment. R. 24. She found Cooksey had the residual functional capacity (RFC) to perform "a full range of sedentary work as defined in 20 CFR 404.1567(a)." R. 25. With this RFC, the ALJ found Cooksey unable to perform her past relevant work. R. 32. However, the ALJ found Cooksey was not disabled under Medical-Vocational Rule 201.27, which directs a finding of not disabled for an individual of Cooksey's age and educational background who is able to perform a full range of sedentary work.[2] R. 33.

### III. FACTUAL BACKGROUND

Cooksey filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) on August 18, 2008, and alleges she became disabled on July 19, 2007. R. 20. Cooksey was 41 years old at the time of the ALJ's decision. R. 33-33. She has a high school education, and past relevant work as a "daycare worker/teacher, door greeter (Wal-Mart), and cashier (grocery store)." R. 32. Cooksey alleges she is disabled due to "diabetes, back problems, stomach, high blood pressure, mitral valve prolapse, severe pain in left hand and right foot." Pl.'s Br. 2.

Treatment records show Cooksey has been treated extensively for type II diabetes mellitus and essential hypertension. These records show Cooksey's essential

---

[2] The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

hypertension was generally well controlled when she was compliant with prescribed medications. *See, e.g.,* R. 598. However, her diabetes was less well controlled, at least in part due to Cooksey's failure to follow prescribed treatment. For example, on December 3, 2008, Dr. Coccia noted Cooksey reported her blood sugar levels were better, and she reported that her blood pressure medication seemed to be working well. R. 484. However, on January 28, 2009, Dr. Coccia counseled Cooksey that her weight and noncompliance with a diabetic diet made control of her diabetes difficult. R. 482. In any event, the medical records do not show Cooksey's diabetes had caused any end organ damage, neuropathy, retinopathy, or neprhopathy.

In 2007 Cooksey was treated for a breast abscess. Her treating doctor completed a return to work form indicating she could return to work with no restrictions on September 4, 2007. R. 232. The abscess ultimately required surgical drainage on November 1, 2001. R. 313. On November 19, 2007, Dr. McLaury noted Cooksey had done well after the abscess was removed. R. 261.

In April 2009 an ultrasound of the thyroid gland showed a well-defined solid mass. R. 445. After further testing, Cooksey underwent a total thyroidectomy on October 29, 2009. R. 562-65. Surgical pathology revealed the presence of two papillary carcinomas. R. 560. On November 1, 2009, Cooksey received a dose of radioactive iodine. R. 569. A December 21, 2009, treatment note states that a recent PET scan "was okay," and Dr. Coccia's assessment was that things were going well with Cooksey's thyroid cancer. R. 598.

After complaining of chest pain in July 2009, Dr. Wu-Varquez ordered a graded exercise test and myocardial perfusion scan.  R. 508.  The scan showed no evidence of ischemia.  R. 506.

Cooksey was treated for a variety of other complaints during the relevant time period.  However, treatment for those conditions was sporadic, and the treatment notes do not suggest they caused a lasting and significant impairment to Cooksey's ability to work.

## IV.  ISSUES PRESENTED

Cooksey raises the following issues on appeal: 1) whether the ALJ erred in rejecting the opinion of Dr. Coccia, one of her treating physicians; 2) whether the ALJ was required to obtain a medical source opinion from either a consultative examiner or a medical expert; and 3) whether the ALJ erred by failing to properly consider her obesity under Social Security Ruling 02-1p.

## V.  DISCUSSION

### A.

Cooksey argues the ALJ improperly rejected the opinions of Dr. Coccia, one of her treating physicians.  Pl.'s Br. 7-8.  On February 24, 2009, Dr. Coccia wrote a letter to the Cullman Department of Human Resources stating Cooksey was "unable to dependably report for work and perform for a six to eight-hour day."  R. 448.  He also stated Cooksey would "be happier than anyone to get back to work as soon as possible but currently, with her medical situation, that is not a realistic expectation."  R. 448.  In addition, Dr. Coccia completed a Food Stamp form on which he indicated Cooksey was unable to work, and

stated that morbid obesity, wide fluctuations in blood sugar, and hypoglycemia were the medical conditions that prevented her from working. R. 496. On that form he also wrote that Cooksey could return to work within a year if she lost weight and got her blood sugar under control. R. 496.

In determining how much weight to give to each medical opinion, the ALJ must consider several factors, including (1) whether the doctor has examined the claimant; (2) whether the doctor has a treating relationship with the claimant; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; and (5) whether the doctor is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the Commissioner's regulations, a treating physician's opinion will be given controlling weight if it is well supported and not inconsistent with other substantial evidence in the record.

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

In considering whether an ALJ has properly rejected a treating physician's opinion, this court is not without guidance. "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the evidence does not bolster the treating physician's opinion; a

contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id*. If a treating physician's opinion is rejected, the ALJ must clearly articulate the reasons for doing so. *Id*. ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.").

The ALJ articulated a number of reasons why she gave Dr. Coccia's opinions little weight. She found that Dr. Coccia's "opinions contrast sharply with the other evidence of record, including his own office notes." R. 31. She also noted that Dr. Coccia's opinions were inconsistent with his treatment notes both before and after the time he rendered his opinions. The ALJ observed that in January 2009 Cooksey "reported she was doing well on her diet and [her] A1C level was 'much better' at 8.3."[3] R. 31, 453, 482. The ALJ noted that subsequently Cooksey's A1C level continued to improve to 7.5. R. 31, 452. She noted that in June and July 2009, Dr. Coccia's notes reflected Cooksey had lost weight, was doing well on Lantus, and required less insulin. R. 31, 473, 465. The ALJ also observed that during Dr. Coccia's "actual examinations and long-term treatment of [Cooksey] he never mentioned such limitations in his treatment notes." R. 32.

---

[3] "The A1C test is a common blood test used to diagnose type 1 and type 2 diabetes and then to gauge how well you're managing your diabetes. . . . The A1C test result reflects your average blood sugar level for the past two to three months. http://www.mayoclinic.org/tests-procedures/a1c-test/basics/definition/prc-2001258 Someone who's had uncontrolled diabetes for a long time might have an A1C level above 8 percent. . . . For most people who have previously diagnosed diabetes, an A1C level of 7 percent or less is a common treatment target." http://www.mayoclinic.org/tests-procedures/a1c-test/basics/results/prc-20012585

The inconsistencies between Dr. Coccia's opinions and his treatment notes provide "good cause" for rejecting those opinions. *Lewis*, 125 F.3d at 1440. Because this court does not reweigh the evidence, there is no reversible error in the ALJ's decision not to credit Dr. Coccia's opinions.

**B.**

Although Cooksey acknowledges there is no express requirement for an RFC assessment from a medical source, she argues that one is required as a practical matter to avoid an ALJ substituting his judgment for that of a physician. Pl.'s Br. 9. However, neither the Commissioner's regulations nor the law of this circuit require that an RFC be based upon a medical source statement from a doctor.

The regulations provides that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions.

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

§ 404.1527(d). One of the specifically excluded examples is a claimant's RFC.

> Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.

§ 404.1527(d)(2). Therefore, under the regulations, a claimant's RFC is not a medical opinion, and a doctor's opinion was not required for the ALJ to assess Cooksey's RFC.

The Eleventh Circuit has also recognized that determining a claimant's residual functional capacity and ability to work is a task for the ALJ, and not doctors.  *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished) ("[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").  It has also found an ALJ's RFC finding can be supported by substantial evidence even if there is no medical source statement in the record.  In *Green v. Social Security Administration*, the Court found the ALJ had properly refused to credit a Physical Capacities Evaluation ("PCE") from the claimant's treating physician.  223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished).  The Court in *Green* rejected the claimant's argument that without that PCE, there was nothing in the record upon which the ALJ could base his RFC finding.  *Id.* at 923.  The Court held that other evidence from the claimant's doctors (which did not contain a PCE or RFC assessment) was sufficient to support the ALJ's finding that the claimant could perform light work.  *Id.* at 923-24; *see also Langley v. Astrue*, 777 F Supp. 2d. 1250, 1258 (N.D. Ala. 2011) (holding RFC is not a medical opinion and need not be based upon a doctor's RFC opinion).

In the present case, there was sufficient medical and other evidence in the record to allow the ALJ to assess Cooksey's RFC.  The ALJ noted that one of Cooksey's treating doctors provided a note indicating she would be able to return to work with no restrictions on September 4, 2007.  R. 27, 232.  She also relied on Cooksey's reported daily activities, which included cooking, cleaning, mopping weekly and shopping for groceries with her

husband. R. 30, 115-16. The ALJ noted Cooksey reported she "can stand and bend but just not for prolonged periods or as often as she used to, she can walk for about one-half mile or 20 minutes at a time, and lift 15-20 pounds for short periods." R. 30, 118. She found these activities were evidence that Cooksey can do sedentary work. R. 30. This evidence is sufficient to allow a reasonable fact finder to conclude Cooksey was able to perform sedentary work. Therefore, the ALJ's RFC finding was based on substantial evidence.

Cooksey also argues the ALJ should have ordered a consultative examination or utilized a medical expert to obtain a medical source opinion. Pl.'s Br. 9. However, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981). Therefore, "although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (unpublished) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

In the present case, there are extensive treatment records and other evidence documenting the extent of Cooksey's impairments. Cooksey has not identified any gaps in the evidence that cause unfairness or prejudice in the absence of a consultative examination or testimony from a medical expert. Therefore, she has not demonstrated the

12

ALJ committed a reversible error by failing to order a consultative examination or elicit testimony from a medical expert.

## C.

Cooksey argues the ALJ failed to adequately consider her obesity under Social Security Ruling 02-1p. Pl.'s Br. 10-11. Social Security Ruling (SSR) 02-01p provides guidance in the evaluation of obesity. It provides that "[t]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment," and that "descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity)" will not establish whether obesity is a "severe" impairment. SSR 02-1p, 2002 WL 34686281, *4 (S.S.A.). Rather, an ALJ must "do an individualized assessment of the impact of obesity on an individual's functioning." *Id*. It also provides that obesity must be considered in assessing a claimant's RFC by assessing "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at * 6.

The ALJ discussed Cooksey's obesity in her decision and found that it did not result in restrictions that would prevent Cooksey from performing sedentary work. R. 27-28. The ALJ noted Cooksey had been obese "during the period when she successfully worked," and that her weight "has essentially remained the same for years." R. 27. The ALJ also observed that Cooksey "has not specifically alleged any functional limitations due to weight and the records of her treating physician likewise are not reflective of any."

R. 27.  Although Cooksey cites to Social Security Ruling 02-1p in her brief, she cites to no evidence showing her obesity prevents her from performing sedentary work.

Therefore, the ALJ properly considered Cooksey's obesity in accordance with SSR 02-01p.  She gave reasons supported by substantial evidence for finding that Cooksey's obesity did not impose limitations on her ability to work greater than those reflected in the RFC finding.  Therefore, the ALJ did not err in her consideration of Cooksey's obesity.

## VI.  CONCLUSION

The court concludes the ALJ's determination that Cooksey is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision.  Accordingly, the Commissioner's final decision is due to be affirmed.  An appropriate order will be entered.

**DONE** this 25th day of July, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE